FILED IN CLERK'S OFFICE
U.S.D.C. -Gainesville

NOV 1 2 2014

JAMES N. HATTEN, Clerk
By: ~~~~~~
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In Re Subpoena issued to | ) | Miscellaneous Case No. |
| Ellijay Telephone Co. | ) | |
| | ) | **2:14-MI·0004** |

## ELLIJAY TELEPHONE COMPANY'S MOTION TO QUASH SUBPOENA AND FOR SANCTIONS

COMES NOW, Ellijay Telephone Company ("ETC") and files this is Motion to Quash Subpoena in reference to a subpoena issued by Rightscorp Inc. ("Rightscorp") and moves for protection and sanctions as follows:

### STATEMENT OF FACTS

ETC is a regional telephone/cable/security and Internet Service Provider ("ISP") in North Georgia. According to the Declaration of Rightscorp's attorney, Dennis J. Hawk, Rightscorp represents unnamed and undisclosed copyright owners in cases of alleged copyrighted sound infringements. See Declaration Pursuant to 17 U.S.C. § 512(h), attached hereto as Exhibit "A." However, none of the documents served upon ETC state which copyright owners are represented by Rightscorp.

ETC is merely a service provider and does not store or host the allegedly infringing material referenced by the subpoena. On or about October 20, 2014,

1

Rightscorp served a Subpoena on ETC that originated from a miscellaneous action in the Central District of California, pursuant to 17 U.S.C. § 512(h)(2)(C) of the Digital Millennium Copyright Act and to Fed. R. Civ. P. 45(c). Ex. A, Rightscorp Declaration, 1. Based upon the documents served upon ETC, there is no pending cause of action or live controversy concerning the alleged infringements. Despite the lack of pending controversy, Rightscorp seeks to force ETC to produce the "name, address, telephone number, and e-mail address," of ***approximately nine thousand*** of ETC's subscribers that are identified by "IP addresses" in a spreadsheet attached to the Subpoena. Ex. B, Spreadsheet "Infringement List".

Attached to the subpoena are also ***more than fifteen thousand pages of*** "Notices," which purportedly show alleged copyright violations by an ETC subscriber's downloading or sharing songs, movies, television shows and other transferable media files. Ex. C, Attached Notices pages 1-10[1]. One Notice states that a subscriber identified by IP address downloaded or shared the song "It's Good to Be Alive." While the notices state that the copyrights of all these songs are exclusively owned by BMG Rights Management, neither the subpoena nor the Declaration states that Rightscorp represents BMG or is in anyway affiliated with

---

[1] ETC is only attaching the first ten pages of the more than fifteen thousand pages of notices, for the sake of judicial economy and efficiency. The act of merely copying the entirety of Rightscorp's documents and attaching them as exhibits alone would cost ETC in excess of $3,000.00.

BMG. For the reasons that follow, Rightscorp's Subpoena should be quashed and sanctions should issue based upon Rightscorp's impropriety.

## ARGUMENT AND CITATIONS OF AUTHORITY

ETC seeks protection from this Court and moves to quash and for sanctions because Rightscorp has served an invasive and overly broad subpoena on ETC, which seeks personal identifying information of almost one thousand ETC internet subscribers.  Rightscorp's subpoena should be quashed for any one of several reasons. First, several federal decisions hold that such a subpoena is improper, given that ETC is an internet service provider that does not store the files that allegedly infringe Rightscorp's copyrights. Second, Rightscorp's subpoena should be quashed because complying with it would be unduly burdensome and expensive to ETC, and furthermore, especially in light of the fact that ETC is not a party to the dispute from which Rightscorp served the subpoena. Third, Rightscorp's subpoena should be quashed because it was issued pursuant to a statute that unconstitutionally allows a district court clerk to issue subpoenas without a live controversy. Fourth and finally, Rightscorp's subpoena is improper and should be quashed because it is procedurally improper. This Court should not allow Rightscorp to use the federal court system as a vehicle to embark on a fishing

expedition. For these reasons, this Court should order Rightscorp to reimburse ETC for the costs incurred in connection with this motion.

## SECTION 512 OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

Section 512 of the Digital Millennium Copyright Act is titled "Limitations on liability relating to material online." 17 U.S.C. § 512. Subsection (a) provides that an Internet Service Provider ("ISP") cannot be held liable for copyright infringement by simply providing internet service if the provider does not share, download, or store allegedly infringing material.

Subsection (h)(1) permits a copyright owner to "request the clerk of any United States district court to issue a subpoena to [an ISP] for identification of an alleged infringer." 17 U.S.C. §512(h) (1). However, courts have held that subsection (h)(1) is **not** applicable to subsection (a). Instead, subsection (h)(1) is applicable to subsection (c), which provides that an ISP that stores infringing material at the direction of its subscribers cannot be held liable for copyright infringement if it meets certain conditions, including a notification requirement. 17 U.S.C. § 512(c). "Significantly, one of the items to be included in any subpoena request is 'a copy of a notification described in subsection [512] (c)(3)(A).'" In re Charter Commc'ns, Inc., Subpoena Enforcement Matter, 393 F.3d 771, 775 (8th Cir. 2005); 17 U.S.C. § 512(h)(2). "This notification is a mandatory part of the

4

subpoena request and a condition precedent to the issuance of a subpoena because the statute further provides, as the '[b]asis for granting subpoena,' that 'the notification filed [must satisfy] the provisions of subsection (c)(3)(A).'" In re Charter, 393 F.3d at 775. Subsection (c)(3)(A)(iii) provides: To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes the following .. . (iii) Identification of the material that is claimed to be infringing ... and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material. 17 U.S.C. § 512(c)(3)(A) (emphasis added).

"In other words, a specific purpose of the notification provision is to allow an ISP [that stores infringing material], after notification, the opportunity to remove or disable access to infringing material and thereby protect itself from liability for copyright infringement." In re Charter, 393 F.3d at 776. Thus, a subpoena under Section 512(h) is ineffective if the ISP does not store allegedly infringing material, because the ISP cannot "locate" or "remove" it. Because that is the case here, Rightscorp's subpoena should be quashed.

## I. RIGHTSCORP'S SUBPOENA SHOULD BE QUASHED BECAUSE FEDERAL LAW DEMONSTRATES THAT IT IS IMPROPER.

Rightscorp's Subpoena should be quashed because federal decisions directly on point show that an ISP that acts as a mere internet conduit and does not store allegedly infringing material is not subject to subpoenas issued under 17 U.S.C. § 512(h) ("Subsection 512(h)"). The United States Court of Appeals for the District of Columbia considered this very issue in <u>Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.,</u> 351 F.3d 1229, 1233-36 (D.C. Cir. 2003). The Court ultimately held that Subsection 512(h) does not permit a copyright owner to serve a subpoena on an ISP to obtain identifying information about alleged infringers, if the copyright owner cannot comply with the notification requirements of 17 U.S.C. § 512(c)(3)(A). Because this notification requires the ISP to be able to both "locate" and "remove" the allegedly infringing material, the <u>Verizon</u> Court held that an ISP that does not store material cannot be subpoenaed under Subsection 512(h), given that the ISP cannot "locate" or "remove" infringing files stored in the hard-drives of its subscribers. <u>Verizon,</u> 351 F.3d at 1233-36.

Thus, where an ISP performs only the "conduit" functions addressed in 512(a), without storing allegedly infringing material, an ISP is not subject to being subpoenaed under Subsection 512(h) because the ISP "cannot remove or disable a user's access to infringing material resident on another user's computer," as required by Subsection 512(c)(3)(A)(iii). <u>Id.</u> at 1235. Furthermore, the Court

rejected the argument that a copyright owner can "substantially" meet the notification requirements of 512(c)(3)(A) without identifying the material to be removed. *Id.* at 1236. The Court also analyzed the structure of Subsection 512 as a whole, and in particular the fact that Subsection 512(h) cross references Subsection 512(c)(3), and Subsection (c) pertains to the safe harbor for "[i]nformation residing on systems or networks at direction of users."

The Court concluded that "the references to § 512(c)(3)" in subsections (b) through (d) "lead inexorably to the conclusion that § 512(h) is structurally linked to the storage functions of an ISP and not to its transmission functions, such as those listed in § 512(a)." Id. at 1237. Finally, the Court further held that it is the province of Congress, not the courts, to decide whether to rewrite Subsection 512(h) "in order to make it fit a new and unforeseen internet architecture" and "accommodate fully the varied permutations of competing interests that are inevitably implicated by such new technology." Id. at 1238 (internal citations omitted). The holding of the *Verizon* decision has been followed by several federal courts,2 most notably by the Eighth Circuit, the only other federal court of appeals to have analyzed this issue. *See* In re Charter Commc'ns, Inc., Subpoena Enforcement Matter, 393 F.3d 771, 777 (8th Cir. 2005). Here, like the ISP in Verizon and In Re Charter, ETC is a mere conduit ISP that allows its users to connect to the internet, and does not store

the allegedly infringing material sought by Rightscorp. In other words, ETC acts as a mere conduit or pass-through for the allegedly infringing material that Rightscorp references in its Subpoena and Notices, and as such ETC cannot access the *See, e.g.,* Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash, 4:12-CV-00963, 2012 WL 4387420, *3 (S.D. Tex. Sept. 25, 2012); In re Subpoena To Univ. of N. Carolina at Chapel Hill, *367* F.Supp.2d 945, 952 (M.D.N.C.2005); Interscope Records v. Does /-7, 494 F.Supp.2d 388, 391 (E.D.Va.2007). personal computers of its users to "locate" and "remove" this material. C. Bunce Affidavit, ~ 4-5; Ex. A, Attached Notices. The fact that ETC cannot "locate" or "remove" this allegedly infringing material necessarily means that Rightscorp cannot satisfy the Notice requirements of Subsection 512(c)(3)(A)(iii), (h)(2) and (h)(4). It follows that Rightscorp's Subpoena must be quashed, because "[i]f a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue; why require a party to produce information the requesting party has no right to obtain?" AF Holdings, LLC v. Does 1-1058, 752 F.3d 990,995 (D.C. Cir. 2014).

## II. RIGHTSCORP'S SUBPOENA SHOULD BE QUASHED BECAUSE RESPONDING TO IT WOULD CAUSE AN UNDUE BURDEN TO ETC.

Rightscorp's Subpoena should be quashed because responding would be unduly burdensome to ETC and would cost them an extraordinary amount of

manpower and money.  In fact, the task of merely requesting the information was so onerous that Rightscorp sent the request with an "attachment" that included a cd of the spreadsheet.  Printing the requested IP transactions alone, not counting the "notices" that accompany them, require hundreds of pages of reading and printing. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(l). "The person responding [to a subpoena] need not provide electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 45(e)(l)(D). Here, responding to Rightscorp's subpoena would be extremely expensive and time-consuming for ETC. Rightscorp' s subpoena seeks the "name, address, telephone number, and e-mail address," of **more than eight thousand** of ETC's subscribers which are identified by "IP addresses" in a spreadsheet attached to the Subpoena. Ex. A. The records sought by the Subpoena are therefore characterized by a monumental volume and their compilation would be unduly expensive. In some instances, obtaining the personal and identifying information of customers would require manual lookups, which would further increase the already monumental cost for ETC. ETC would also be required to incur significant legal costs to ensure that responding to the subpoena does not violate state and federal

privacy statutes, like the Electronic Communications Privacy Act, *see* 18 U.S.C. §§ 2701, *et seq.,* and in notifying each user whose personal information was disclosed. The administrative cost of task would easily be thousands of dollars.

Furthermore, because ETC is not even a party to any pending litigation involving alleged copyright infringements, the subpoena seeking thousands and thousands of pages of information is unreasonable and burdensome. It is well established that "non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." Consequently, "in the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, nonfact witness in weighing burdensomeness versus relevance. '" Aeritas, LLC v. Delta Airlines, Inc., No. 1:13-CV-00346-RWS, at *22013 WL 454452 (N.D. Ga. Feb. 7, 2013). This is because "nonparties are afforded 'special protection against the time and expense of complying with subpoenas. '" Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No.2, 197 F.3d 922, 926-27 (8th Cir. 1999) (citing Exxon Shipping Co. v. United States Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994). Therefore, "where, as here, third-party discovery is at issue, the Court has the responsibility to determine whether a subpoena imposes an undue burden, and if it finds the burden is undue, the Court must quash the subpoena." Charles v.

Quality Carriers, Inc., No. 1:08CV00428-RL Y 2010 WL 396356, at * 1 (S.D. Ind. Jan. 28, 2010) (citing Fed. R. Civ. Pro. 45(c) (3)(A)(Even if there were an underlying lawsuit here, ETC would be a nonparty with no vested interest in such litigation. As Rightscorp concedes in its declaration, the "purpose of the . . . subpoena is to obtain the identity of alleged copyright infringers" which are ETC subscribers, not ETC. Rightscorp Declaration. It follows that forcing ETC to respond to Rightscorp's Subpoena would run afoul of the "special protections" given to nonparties, because the subpoena seeks an extraordinary and unreasonable amount of information, the compilation of which would be unduly burdensome and extraordinarily expensive.

This Court should quash Rightscorp's subpoena because it is unduly burdensome. But in the event that ETC is forced to comply with the subpoena, the Court, in the interest of fairness should at least require Rightscorp to pay for the cost of complying with the subpoena.

## III. THE SUBPOENA IS UNCONSTITUTIONAL AND SHOULD BE QUASHED BECAUSE IT IS NOT ASSOCIATED WITH A PENDING ACTION OR CONTROVERSY.

Rightscorp's Subpoena should be quashed because it was issued pursuant to Section 512(h), a federal statute that unconstitutionally allows a clerk of a district court to issue a subpoena even when no present action is pending and no live

controversy even exists. *See* 17 U.S.C. § 512. Under Supreme Court precedent, "the subpoena power of a court cannot be more extensive than its jurisdiction. It follows that if a district court does not have subject-matter jurisdiction over the underlying action and the process was not issued in aid of determining that jurisdiction, *then the process is void* and an order of civil contempt, based on refusal to honor it, must be reversed." U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988) (emphasis added). Moreover, "Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies. '" Diamond v. Charles, *476* U.S. 54, 61-62 (1986). "This requirement ensures the presence of the 'concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions. '" ld. (citing Baker v. Carr, 369 U.S. 186,204 (1962).

Here, Rightscorp's Subpoena should be quashed because, at the time of its issuance, the Central District of California had no subject-matter jurisdiction over the underlying action due to the absence of an ongoing lawsuit. Rightscorp issued the Subpoena from a miscellaneous action, one without a plaintiff or a defendant, and thus, there was no live controversy. *See* Miscellaneous Action, MCI4-671, Central District of California. Rightscorp's subpoena is an abuse of the judicial

process in that it is merely a fishing expedition in an attempt to locate potential defendants.   Federal courts are not investigative bodies and can only issue subpoenas to further discovery of existing cases. Diamond, 476 U.S. at 61-62. Thus, this subpoena is improper and should be quashed.

## IV. THE SUBPOENA SHOULD BE QUASHED BECAUSE IT DOES NOT COMPLY WITH THE PROCEDURAL REQIDREMENTS OF SECTION 512.

Rightscorp's subpoena should be quashed because there is no evidence or inference that Rightscorp even represents the owners of the copyrights that were allegedly infringed upon. Section 512(h)(l) provides that only a "copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer." 17 U.S.C. § 512(h)(1). Subsection (h)(4) provides that a clerk can issue a subpoena only if the "accompanying declaration is properly executed." 17 U.S.C. § 512(h)( 4).

The notices attached to the subpoena state that the copyrights of the songs that were allegedly downloaded or shared by ETC subscribers are held by BMG Rights Management, (US) LLC. However, neither the subpoena nor Rightscorp's declaration state that Rightscorp represents BMG.  Rather, Rightscorp broadly states that it is "a representative of various copyright owners…on matters involving

the infringement of their copyrighted sound recordings." Rightscorp Declaration.
This vague statement fails to comply with the clear requirements of Subsection
(h)(1) and (4), because Rightscorp does not declare that it is authorized to act on
behalf of the copyright owner.   It follows that the subpoena should have never
been issued, because the "accompanying declaration [was not] properly executed."
17 U.S.C. § 512(h)(1) & (4). Consequently, the subpoena should be quashed.

## V. RIGHTSCORP SHOULD BE ORDERED TO REIMBURSE ETC FOR THE COSTS ETC INCURRED IN CONNECTION WITH THIS MOTION.

Rightscorp should be ordered to reimburse ETC for serving its invasive,
meritless, and unduly burdensome Subpoena. "A party or attorney responsible for
issuing and serving a subpoena must take reasonable steps to avoid imposing
undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P.
45(d)(1). "[W]hen the purpose of a discovery request is to gather information for
use in proceedings other than the pending suit, discovery properly is denied."
Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 353, fn. 17 (1978). Under Rule
11 "[ a] signature certifies to the court that the signer has read the document, has
conducted a reasonable inquiry into the facts and the law and is satisfied that the
document is well grounded in both." Bus. Guides, Inc. v. Chromatic Commc'ns,
Inc., 498 U.S. 533,542-43 (1991).

Rightscorp's Subpoena is meritless and frivolous because, as noted above, in

Verizon and In re Charter, the D.C. Circuit and Eighth Circuit held that an ISP cannot be required to disclose user information under Section 512(h), if the ISP acts as a mere conduit for its subscribers and does not store infringing material.

Verizon, 351 F.3d at 1233-36; In re Charter, 393 F.3d at 777. Rightscorp's failure to address In Re Charter and Verizon merits sanctions because these decisions were brought to its attention in a prior proceeding. Rightscorp issued another subpoena to an ISP from the Central District of California on August 6, 2014. The ISP moved to quash the subpoena in the Western District of Texas and relied heavily on In Re Charter and Verizon. *See* In Re Subpoena issued to Grande Communications, Western District of Texas, Case No. AI4MC0848-LY. Doc. 1, at 5-6. Once the ISP moved to quash, Rightscorp withdrew its subpoena. Rightscorp knew thus that subpoenas like the one at issue here have been rejected by the two courts of appeals that have considered the issue, and by many other federal courts.

As explained by the Texas ISP in its motion to quash, Rightscorp uses subpoenas as "part of an ongoing campaign...to harvest 'settlements' from Internet subscribers...located across the nation through an abuse of subpoena power of the federal courts in California." ld. Doc. 1, at 3. This year alone, Rightscorp has filed approximately 100 miscellaneous actions like this one, trying to force regional ISPs to disclose personal identifying information from their subscribers. *ld.* Doc. 1,

at 3. Rightscorp's strategy is to gamble on regional ISPs being unaware that Section 512(h) does not support these subpoenas on a pass- through ISP, and to hope that regional ISPs will avoid involving counsel and incurring legal expenses to fight Rightscorp's subpoenas. As if this was not enough, Rightscorp failed to comply with the procedures of Subsection 512(h)(l) and (h)(4), as noted above, and in effect served a defective subpoena. Ignoring nearly unanimous federal precedent, Rightscorp knowingly served a frivolous subpoena. ETC should not be required to incur legal expenses to defend against same. Thus, this Court should order Rightscorp to reimburse ETC even if it withdraws its Subpoena, because it already forced ETC to incur legal costs to file this motion that cannot be reversed.

For the foregoing reasons, this Court should quash Rightscorp's Subpoena and should order Rightscorp to reimburse ETC for legal costs incurred in connection with this motion.

This 12th day of November, 2014.

Clark & Clark

By: _Mary Beth Priest_

Mary Beth Priest
Ga. Bar No. 826056
Herman Clark
Ga. Bar No. 127050
Attorneys for Ellijay Telephone Co.

84 River St.
Ellijay, Georgia 30540
(706)635-1010
mpriest@ellijay.com
hclark@ellijay.com

## <u>7.1 CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D) of the Northern District of Georgia, I hereby certify

that this document was prepared in Times New Roman font, 14 point, pursuant to

L.R. 5.1(c).

This 12th day of November, 2014.

Clark & Clark

By: _Mary Beth Priest_

Mary Beth Priest
Ga. Bar No. 826056
Herman Clark
Ga. Bar No. 127050
Attorneys for Ellijay Telephone Co.

84 River St.
Ellijay, Georgia 30540
(706)635-1010
mpriest@ellijay.com
hclark@ellijay.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served the foregoing Motion to Quash Subpoena and for Sanctions upon all parties to this matter by depositing a true copy of the same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

Dennis J. Hawk
Business Law Group
3100 Donald Douglas Loop N.
Santa Monica, CA 90405
Email:  dennis@dhwk.com
Attorney for Rightscorp, Inc.


David Kim
David Kim & Associates
1720 Peachtree St., Suite 336
Atlanta, GA 30309
Email:  david@kimandassociates.net
Attorney for Rightscorp, Inc.

Clark & Clark

By:  _Mary Beth Priest_

Mary Beth Priest
Ga. Bar No. 826056
Herman Clark
Ga. Bar No. 127050
Attorneys for Ellijay Telephone Co.

84 River St.
Ellijay, Georgia 30540
(706)635-1010
mpriest@ellijay.com
hclark@ellijay.com